# THE BOARD OF WATER COMMISSIONERS

*v.*

## CLINTON L. CONKLING.

*Filed at Springfield March 30, 1885.*

1.  SPRINGFIELD WATER WORKS—*assessments on account of hydrants— whether to be made annually.* Section 15 of the act of February 21, 1861, to incorporate the Springfield Water Works Company, which imposes a duty to construct hydrants, and then declares that the commissioners "shall assess the houses and other buildings in the vicinity of said hydrants in the proportion in which they shall deem the same, respectively, benefited," does not authorize the annual assessment of the houses and buildings in the vicinity for supposed benefits. The intention was, that the entire benefit should be assessed at once.

2.  Under that section the commissioners are not authorized to go on, from year to year, and assess the property for supposed benefits conferred, for the purpose of keeping up repairs. The power to make annual assessments of a tax for the extension and maintenance of water works is given in the act of April 27, 1871. (Rev. Stat. 1874, chap. 24, sec. 246.)

3.  SAME—*mode of collecting assessments.* If the power to "assess the houses and other buildings" in the vicinity of hydrants, means to give authority to fix the amount to be paid by the owners, such sums can only be collected by suit, the same as any other indebtedness; but if it means to confer upon the board the power to make special assessments as known in the statute, they can only proceed in the manner provided by the general law for the collection of special assessments, whereby the owner, on proper notice, can be heard before a judicial tribunal before his rights can be determined.

4.  Sections 12 and 15, of the act of February 21, 1861, relating to the Springfield Water Works Company, in so far as they authorize the collection of an assessment in a summary manner, by levy and sale, under a warrant of the commissioners, has been repealed or changed by the constitution of 1870 and the general laws passed in pursuance of that instrument on the subject, which general law must be followed in such cases.

APPEAL from the Circuit Court of Sangamon county; the Hon. WILLIAM L. GROSS, Judge, presiding.

Mr. N. M. BROADWELL, for the appellant.

Mr. JAMES C. CONKLING, for the appellee.

Mr. JUSTICE CRAIG delivered the opinion of the Court: ·

The buildings of appellee, on account of their proximity to fire hydrants, were assessed in the years 1879, 1880, 1881, 1882 and 1883, under section 15 of appellant's charter, for supposed annual benefits arising from the location of the hydrants, and the board of water commissioners for the city of Springfield was proceeding to collect the assessments by warrant issued by the board, under section 12 of the charter, when appellee filed this bill to enjoin the constable who held the warrant from collecting the assessments by the sale of personal property upon which he had levied.

An act to incorporate the Springfield Water Works Company was passed by the legislature on the 21st day of February, 1861. The act designated that the corporation should be known as "The Board of Water Commissioners of the city of Springfield," with power to contract, sue and be sued, to purchase and hold real and personal property, to have a common seal, to make by-laws, and do all acts necessary to carry out the objects of the act. Section 8 authorized the commissioners, in conjunction with the city council of Springfield, to borrow not exceeding $200,000 upon the credit of the city, and, with the approval of the city, issue bonds for the same. Section 9 empowered the commissioners to assess the amounts to be paid for water used at each house or other building, against the occupant or owner, upon such basis as they might deem equitable. Section 10 authorized the board to assess as water rents such amounts as they deemed equitable, upon the owner or occupant of any building situated on lots adjoining any street through which the distributing water pipes may be laid, from which such building may be conveniently supplied with water, whether the owner shall make use of the water or not. Section 11 authorized the commissioners, from time to time, to assess upon the person occupying or owning any house situated in the vicinity of

any public hydrant, where said house is not supplied by a private hydrant, such amount as, in their judgment, the occupant might be benefited by the use of such public hydrant. Sections 12 and 15 are as follows:

"Sec. 12. It shall be the duty of the said commissioners to collect the rents so assessed, as required in the foregoing sections; and in case any person or persons so assessed shall neglect to pay any such assessment for ten days after the time fixed for payment thereof, of which notice shall be given in a newspaper published in said city, such notice to be at least ten days before the time fixed for the payment of such rents, said commissioners shall issue their warrant, under the seal of said corporation, directed to the marshal or any constable of said city, commanding him to make the amount specified in such warrant, being the amount due for water rents, as aforesaid, together with the costs of advertising the same, and such fees as constables are entitled to by the laws of this State in the levy and sale of personal property upon execution, out of goods and chattels of the person or persons so assessed, as aforesaid; and the marshal or constable, in such case, may levy, under said warrant, upon any personal property of the person or persons against whom the same is issued, and sell the same at public auction, after giving ten days' notice of the time and place of sale, in some newspaper published in said city; and such warrant shall authorize the sale of any house or building on which any lien shall have attached, as aforesaid, subject only to such *bona fide* incumbrances as shall have existed prior to the time of the introduction of such water, as aforesaid."

"Sec. 15. It shall be the duty of said commissioners to construct hydrants of sufficient size and capacity, and in such localities, as they shall deem desirable for the purpose of extinguishing fires; and they shall assess the houses and other buildings in the vicinity of said hydrants in the proportion in which they shall deem the same, respectively, benefited; and

the said assessment shall be collected in the same manner as herein provided for the collection of the water rents assessed by said corporation."

The hydrants involved in this controversy were constructed in 1867, at the time of the construction of the water works in the city; but it will be observed that the assessments which appellant undertook to collect were not made on account of the original construction of the hydrants, but on account of supposed annual benefits which the construction of the hydrants added to the property.

The first question to be considered is, whether section 15 of the charter confers upon the board the power to make annual assessments on property for hydrants already constructed. The language of the section, considered in connection with the other sections of the act, does not seem broad enough to confer the power claimed. The language used is: "It shall be the duty of the said commissioners to construct hydrants of sufficient size and capacity, and in such localities, as they shall deem desirable for the purpose of extinguishing fires; and they shall assess the houses and other buildings in the vicinity of said hydrants in the proportion in which they shall deem the same, respectively, benefited." Nothing whatever is here said in reference to annual assessments, or assessments for repairs, or furnishing the required supply of water, but the requirement is to construct hydrants, and the buildings are to be assessed to pay for the original construction. If it had been intended by the legislature that the board of commissioners should go on, from year to year, and assess the property for the supposed benefit conferred, for the purpose of keeping up repairs, it is plain that different language would have been employed to express that intention. In section 9, where water has been used by the owner or occupant of a building, the act declares that the commissioners shall, from time to time, assess the amounts to be paid for water used; and where a public hydrant has been

constructed, by the terms of section 11 the commissioners are authorized to make assessments, from time to time. But no such language is found where an assessment is made for construction. The intention, no doubt, was, that where a hydrant was constructed under section 15, the entire benefit should be assessed at once. If such had not been the intention, a provision similar to that embraced in section 9 or 11 would have been incorporated in section 12. That cities did not have the power to make annual assessments, would seem to follow from the enactment of a law April 22, 1871, (Rev. Stat. 1874, chap. 24, sec. 246,) which declares that the legislative authority of any city which established water works shall have power to annually levy and collect a tax, which tax shall be known as "the water fund tax," for the extension and the maintenance of the water works, and that the board of water works should first certify to the legislative authority of the city the amount necessary for such purposes. This act was passed with an emergency clause, which would seem to indicate, in the opinion of the legislature at least, that no provision of law existed under which the system of water works in cities could be repaired and maintained. If resort could be had to special assessments, where existed the necessity for this new statute, and that it should go into effect immediately?

But if the commissioners had the power to make the assessment, can they go on and collect without the sanction of any judicial proceeding, as they were attempting to do? No judgment had been rendered, nor had any court issued an execution, and yet a constable had seized the personal property of appellee, and was about to sell it under a warrant issued by the commissioners,—a body possessing no judicial powers whatever. The precise nature of the power intended to be conferred by section 15 of appellant's charter is not entirely clear, from the reading of the charter. If, by the use of the term "assess the houses and other buildings," it was intended

merely to give appellant authority to fix upon the amount that should be paid, then, as between the board and the owner, the amount assessed could only be collected in the same manner as any other indebtedness,—by suit brought for that purpose. If, on the other hand, the language used was intended to confer upon the board of commissioners the power to make special assessments, as that term is known in the statute, they could only proceed in the exercise of that power in the manner provided by law. If they proceeded in any other manner their acts would be illegal, and binding upon no one. It will be observed that the city of Springfield has adopted the general law for the incorporation of cities and villages, and it will, of course, be controlled by all acts of the legislature relating to such incorporations.

Article 9, section 9, of the constitution of 1870, provides that the General Assembly may vest the corporate authorities of cities, towns and villages with power to make local improvements by special assessments, etc. Section 4, of article 9, declares that the General Assembly shall provide that where it may be necessary to sell real estate for the non-payment of special assessments, a return of such assessments shall be made to some general officer of the county. Under and in pursuance of these provisions of the constitution, the legislature passed article 9, of chapter 24, of the Revised Statutes of 1874, where will be found a complete system for making and collecting special assessments, and under which the right of every property owner is fully guarded and protected. Notice of the proposed assessment has to be given; time and opportunity are given the property owner to file objections; judgment is required to be rendered. Indeed, various safeguards for the protection of the property of the citizen are here provided, and they are all so inconsistent with sections 12 and 15 of appellant's charter, that the two can not stand together; and we are satisfied that sections 12 and 15, in so far as they authorize the collection of an

assessment in a summary manner, as therein indicated, have been repealed or changed by the constitution and the general laws passed in pursuance of that instrument on the subject, which general laws must prevail and be followed in such cases. This view is also strengthened by the passage of an act May 21, 1877, providing for the collection of water taxes, rates or assessments heretofore levied, in cities which have adopted the general Incorporation law. Laws of 1877, p. 60.

The decree of the circuit court will be affirmed.

*Decree affirmed.*